UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOHNNY AGUILAR, | No. 4:15-CV-05020-JTR |
| Plaintiff, | ORDER GRANTING |
| v. | DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| CAROLYN W. COLVIN,<br>Commissioner of Social Security, | |
| Defendant. | |

**BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF Nos. 15, 16.  Attorney David M. Church represents Johnny Aguilar (Plaintiff); Special Assistant United States Attorney Leisa A. Wolf represents the Commissioner of Social Security (Defendant).  The parties have consented to proceed before a magistrate judge.  ECF No. 6.  After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

### JURISDICTION

On June 9, 2010, Plaintiff's mother protectively filed an application for Supplemental Security Income (SSI) on behalf of Plaintiff, a minor.  Tr. 162-68. The application alleged that Plaintiff was disabled beginning July 15, 2002.  Tr.

162.   The application was denied initially and upon reconsideration.  Tr. 91-93, 97-99.  Administrative Law Judge (ALJ) Moira Ausems held a hearing on April 10, 2013, at which Plaintiff, who was not represented by counsel, testified, as did his mother Tammy Castaneda, psychological expert Larry M. Kravitz, Ph.D., and vocational expert (VE) Trevor Duncan.  Tr. 38-88.  On March 1, 2013, the ALJ postponed the hearing to allow Plaintiff to obtain representation.  Tr. 13, 40-41. The ALJ issued an unfavorable decision on July 11, 2013.  Tr. 13-34.  The Appeals Council denied review.  Tr. 1-3.  The ALJ's July 2013 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on February 26, 2015.  ECF Nos. 1, 4.

### STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was 18 years old at the time of the hearing.  Tr. 162.  Plaintiff attended school through twelfth grade taking mostly special education classes, but he was "disenrolled" before he could graduate.  Tr. 57-58.  Plaintiff testified that he recently did security work for a friend; his duties were to "sit at the front door, look tough[,] and pat people down to make sure there [were] no fights."  Tr. 63-64. Plaintiff had only done this work on one occasion, but hoped to do it more.  Tr. 65.

Plaintiff testified that he has problems controlling his temper, which sometimes causes him to "black out" or "go into a bipolar attack."  Tr. 59. Plaintiff also testified that he has migraine headaches, and for a time, had migraine headaches every day.  Tr. 74-75.

On a typical day, Plaintiff will wake up around 2:00 p.m. and watch television and play video games.  Tr. 63.  Plaintiff lives with his mother and they split the household chores.  Tr. 65.  Plaintiff is usually responsible for doing the

1  dishes, taking out the garbage, and cleaning the house.  Tr. 65.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id.* at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097.  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

### A.    Childhood sequential evaluation process

To qualify for disability benefits, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(I).

The Social Security Administration has enacted a three-step sequential analysis to determine whether a child is eligible for SSI benefits. 20 C.F.R. § 416.924(a). First, the ALJ considers whether the child is engaged in "substantial gainful activity." *Id.* at § 416.924(b). Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," which is defined as an impairment that causes "more than minimal functional limitations." *Id.* at § 416.924(c). Finally, if the ALJ finds a severe impairment, the ALJ must consider whether the impairment "medically equals" or "functionally equals" a disability listed in the regulatory "Listing of Impairments." *Id.* at § 416.924(c)-(d).

An impairment "functionally equals" a listed impairment if it results in marked limitations in at least two of six functional domains or an extreme limitation in at least one domain. 20 C.F.R. § 416.926a(a). The six functional domains are (1) acquiring and using information; (2) attending and completing tasks; (3) interacting with and relating to others; (4) moving about and manipulating objects; (5) caring for oneself; and, (6) health and physical well-being. *Id.* at § 416.926a(b)(1)(i)-(vi); SSR 09-1p, available at 2009 WL 396031, at *1. A marked limitation "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* at § 416.926a(e)(2). An extreme limitation "interferes very seriously" with those abilities. *Id.* at § 416.926a(e)(3). In assessing whether the claimant has "marked" or "extreme" limitations, the ALJ must consider the functional limitations from all medically determinable impairments, including any impairments that are not severe. *Id.* at § 416.926a(a). The ALJ must also consider the interactive and cumulative effects of the claimant's impairment or multiple impairments in any affected domain. *Id.* at § 416.926a(c).

**B.    Adult sequential evaluation process**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen*

*v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one through four, the burden of proof rests upon claimants to establish a prima facie case of entitlement to disability benefits.  *Tackett*, 180 F.3d at 1098-1099.  This burden is met once claimants establish that physical or mental impairments prevent them from engaging in their previous occupations.  20 C.F.R. § 416.920(a)(4).  If claimants cannot do their past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimants can make an adjustment to other work, and (2) specific jobs exist in the national economy which claimants can perform.  *Batson v. Comm'r of Soc.  Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004).  If claimants cannot make an adjustment to other work in the national economy, a finding of "disabled" is made.  20 C.F.R. § 416.920(a)(4)(i-v).

## ADMINISTRATIVE DECISION

On July 11, 2013, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

The ALJ's first analyzed whether Plaintiff was disabled prior to age 18.

First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date.  Tr. 18.

Second, the ALJ found that Plaintiff had the following severe impairments: attention deficit hyperactivity disorder (ADHD); major depressive disorder; hypertension; migraines; and obesity.  Tr. 18.

Third, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listings.  Tr. 18.  The ALJ further found that Plaintiff did not have an impairment or combination of impairments that functionally equaled the Listings.  Tr. 19.  The ALJ concluded that Plaintiff was not disabled prior to attaining age 18.  Tr. 30.

As Plaintiff turned eighteen prior to the time of the hearing, the ALJ further analyzed whether Plaintiff was disabled after attaining age 18.

The ALJ found that Plaintiff had not developed any new impairments since

ORDER GRANTING DEFENDANT'S MOTION . . . - 5

attaining age 18.  Tr. 30.

The ALJ found that, since attaining age 18, Plaintiff continued to have a severe impairment or combination of impairments, but did not meet the Listings. Tr. 30.

The ALJ assessed Plaintiff's residual function capacity (RFC) and determined he could perform a full range of work at all exertional levels but with following nonexertional limitations:  "[Plaintiff] is able to understand, remember, and carry out simple and routine tasks.  [Plaintiff] can have brief superficial contact with the public and cooperative teamwork with coworkers." Tr. 32.  The ALJ found Plaintiff had no past relevant work.  Tr. 32.

The ALJ determined that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the VE, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of production assembler, hand packager, and laundry worker. Tr. 32-33.  The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from January 22, 2013, the date Plaintiff attained age 18, through the date of the ALJ's decision.  Tr. 33.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits, and, if so, whether that decision is based on proper legal standards.  Plaintiff contends the ALJ erred by (1) failing to conduct an adequate childhood step three analysis; (2) failing to conduct an adequate adult step five analysis; (3) failing to adequately develop the record; (4) failing to properly consider Plaintiff's testimony about the severity of his symptoms; and (5) improperly rejecting the testimony of Plaintiff's mother.

## DISCUSSION

### A.    Credibility

Plaintiff contests the ALJ's adverse credibility determination.  ECF No. 15

ORDER GRANTING DEFENDANT'S MOTION . . . - 6

1  at 17-18.

2      It is generally the province of the ALJ to make credibility determinations,

3  *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific

4  cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent

5  affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's

6  testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d

7  1273, 1281 (9th Cir. 1996).  "General findings are insufficient:  rather the ALJ

8  must identify what testimony is not credible and what evidence undermines the

9  claimant's complaints."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

10      The ALJ found Plaintiff's reporting of the intensity, persistence, and limiting

11  effects of his symptoms not fully credible.  Tr. 21, 32.  The ALJ reasoned that

12  Plaintiff was less than credible because (1) objective evidence did not support

13  Plaintiff's testimony of having daily migraines, (2) Plaintiff did not take prescribed

14  medication for ADHD or hypertension, was not prescribed medication for his

15  depression, and did not seek a refill of his migraine medications, (3) Plaintiff had

16  not sought treatment since January 2013, (4) Plaintiff's academic problems

17  stemmed from poor attendance, rather than cognitive or social dysfunction, and (5)

18  Plaintiff's reports, and the reports of Plaintiff's mother's, regarding Plaintiff's

19  behavioral issues were inconsistent with reports contained in Plaintiff's school and

20  medical records.  Tr. 21-22, 32.

21      **1.  Neck pain and daily migraines not supported by medical evidence**

22      The ALJ noted that objective medical evidence, including x-rays, did not

23  support Plaintiff's reports of neck pain and daily migraines.  Tr. 22-23 (citing Tr.

24  301).  The ALJ further noted that treatment records indicated that Plaintiff had

25  only occasional headaches and his headaches were related to medication

26  noncompliance.  Tr. 23 (citing Tr. 297-302, 319-22, 349-90, 391-95).

27      Although it cannot serve as the sole ground for rejecting a claimant's

28  credibility, objective medical evidence is a "relevant factor in determining the

severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ's finding that Plaintiff's neck pain and daily migraine headaches are not supported by objective evidence is a specific, clear, and convincing reason to discredit Plaintiff. Plaintiff does not appear to contest that his neck pain is not a severe impairment. As noted by the ALJ, Plaintiff inconsistently reported his neck pain, and objective evidence does not establish the presence of any abnormality that would cause such pain. Furthermore, substantial evidence supports the ALJ's finding the record indicates that Plaintiff only occasionally reported migraine headaches and the headaches decreased with medication compliance. *See*, *e.g.*, 370 (Dr. Hernandez noting that Plaintiff's blood pressure had gone down with use of atenolol and that Plaintiff "report[ed] that headache frequency and severity are less and much improved."); Tr. 377 (Dr. Hernandez noting connection between hypertension and headaches). The ALJ did not err in finding Plaintiff's neck pain and daily migraines unsupported by the objective evidence and inconsistent with Plaintiff's symptom reporting.

### 2. Failure to take prescription medication

The ALJ noted that Plaintiff had been diagnosed with ADHD, but had not taken medication since approximately 2007. Tr. 21 (citing Tr. 304). The ALJ also noted that Plaintiff had been prescribed medication for migraines and hypertension, but he no longer took those medications. Tr. 32 (citing Tr. 392).

The fact that a condition can be remedied by medication is a legitimate reason for discrediting an opinion. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Furthermore, noncompliance with medical care can cast doubt on a claimant's subjective complaints. 20 C.F.R. § 416.930; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

The fact that Plaintiff did not consistently take his medications as prescribed is a specific, clear, and convincing for discrediting Plaintiff. The ALJ cited

substantial evidence supporting this finding, which is consistent with other evidence in the record. *See* Tr. 46-47 (Plaintiff's mother testifying that Plaintiff last used psychotropic medications in seventh grade); Tr. 71 (Plaintiff's mother testifying that Plaintiff took Atenolol for hypertension, but stopped taking it); Tr. 75 (Plaintiff testifying that he took prescription medication for migraines but he stopped taking it because he did not have a primary care physician after Dr. Tatunay); Tr. 322 (Dr. Tatunay noting Plaintiff "is not actually taking his [blood pressure] medications . . . on a regular basis"); Tr. 374 (Dr. Hernandez noting Plaintiff had not been taking his hypertension medication as prescribed). The ALJ did not err in discrediting Plaintiff based on Plaintiff's noncompliance with his medication.

### 3. Failure to seek treatment

The ALJ noted that Plaintiff had not sought treatment since January 2013 when he turned eighteen, at which time his pediatric provider required him to find a new primary care provider. Tr. 32.

Unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints. 20 C.F.R. § 416.930; *Fair*, 885 F.2d at 603.

The fact that Plaintiff had not sought medical treatment for approximately three months prior to the ALJ's decision is not a clear and convincing reason to discredit Plaintiff. The record indicates that Plaintiff sought fairly regular medical treatment from at least 2010 to 2013. Tr. 300-02, 321-22, 349-95. Furthermore, Plaintiff's failure to seek treatment can at least partially be explained by the fact that his primary care physician, Dr. Tatunay, did not treat adults and required Plaintiff to seek another doctor after he turned eighteen years old. *See* Tr. 391 (January 2013 treatment note in which Dr. Tatunay advises Plaintiff of the need for him to look for a primary care provider for prescription refills and medication management). Any error, however, is harmless given the ALJ's other valid

reasons for discrediting Plaintiff. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

### 4. Poor school attendance and lack of effort as reasons for academic problems

The ALJ noted that Plaintiff's teachers did not find Plaintiff to have significant deficits in social functioning. Tr. 21. The ALJ noted that a significant part of Plaintiff's academic issues were caused by poor school attendance. Tr. 21 (citing Tr. 50 (Dr. Kravitz testifying that school attendance problems contributed to Plaintiff's poor academic performance); Tr. 227 ("[school] attendance has been dismal this year"); Tr. 294 (Plaintiff given detention for being tardy); Tr. 235 ("School attendance has stymied progress in all academic areas")). The ALJ noted that some of Plaintiff's absences were excused for medical reasons, but many absences were not excused. Tr. 21-22 (citing Tr. 200, 206 (Mr. Anderson reporting Plaintiff absent seventy percent of the time and most absences were not excused)). The ALJ further noted that Plaintiff's teacher reported that he chose not to put forth maximum effort. Tr. 22 (citing Tr. 296).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements . . . and other testimony by the claimant that appears less than candid." *Smolen*, 80 F.3d at 1284.

Substantial evidence supports the ALJ's finding that Plaintiff is not as cognitively or behaviorally limited as he alleges based on the fact that his academic problems can be attributed to his unexcused school absences. As the ALJ notes elsewhere in her decision, "When a student is routinely absent, it takes extra time for the student to catch up to his peers and to complete missed assignments." Tr. 27. The ALJ reasonably inferred that Plaintiff's allegations of cognitive impairments were not indicative of disability, but a result of poor attendance and

lack of effort.  This is a specific, clear, and convincing reason to discredit Plaintiff.

## 5. Inconsistent statements

The ALJ noted inconsistencies about Plaintiff's ability to engage socially and maintain appropriate behavior.  Tr. 22.  The ALJ cited Plaintiff's mother's reports that Plaintiff engages in self-mutilation and sexual self-stimulation and also cited a treatment note documenting an incident that ended with police holding Plaintiff at gunpoint.  Tr. 22 (citing Tr. 304, 322).  The ALJ found the reports of Plaintiff and Plaintiff's mother inconsistent with his teachers' reports that indicate Plaintiff gets along well with peers and teachers.  Tr. 22 (citing Tr. 227, 243, 245, 300, 305).  The ALJ also noted that there was no evidence of self-mutilation and that Plaintiff's examining sources found Plaintiff cooperative.  Tr. 22, 307.  The ALJ noted that Plaintiff and Plaintiff's mother inconsistently reported details of his police encounter and his altercation with his school's vice principal.  Tr. 22.  Finally, the ALJ noted that Plaintiff's mother had earlier indicated that Plaintiff had no social functioning limitations.  Tr. 22 (citing Tr. 175).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements . . . and other testimony by the claimant that appears less than candid."  *Smolen*, 80 F.3d at 1284.

The inconsistencies noted by the ALJ between Plaintiff's (and Plaintiff's mother's) reporting of his behavioral and social problems and the reports of Plaintiff's teachers and medical providers is a specific, clear, and convincing reason to discredit Plaintiff.  Substantial evidence supports that Plaintiff's behavior in school is usually appropriate.  *See, e.g.*, Tr. 227 (Plaintiff's teachers reporting that Plaintiff's "behavior is fine.  He does his work.  He's very polite and doesn't argue or show defiance.  He just needs to come to school every day.").  The ALJ also properly cited other inconsistencies between Plaintiff's reporting and third party reports.  *Smolen*, 80 F.3d at 1284.  The ALJ did not err in using these

inconsistencies to discredit Plaintiff.

### 6. Conclusion

In conclusion, the ALJ provided specific, clear, and convincing reasons for finding Plaintiff less than credible. The ALJ's adverse credibility determination is supported by substantial evidence and any error is harmless.

## B. Childhood step three analysis

Plaintiff argues that the ALJ erred by not finding him markedly limited in at least two functional domains at step three of the childhood disability analysis. ECF No. 15 at 9-13. Plaintiff argues that substantial evidence supports that he is markedly limited in his ability to care for himself, attend and complete tasks, and health and physical well-being, and, therefore, his impairments functionally equal the childhood listings. *Id.*

At step three of the childhood sequential process, an impairment causes a "marked limitation" if it "seriously interferes with [a person's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I). In assessing severity, the Commissioner must consider not only the claimant's medically determinable impairments, but also such factors as the child's age, the effects of any chronic illness, the impact of any medication the child is taking, the effects of structured or highly supported settings, adaptions, time spent in therapy, school attendance, and pain and other symptomatology. *Id.* at §§ 416.924a–416.924c, 416.928–416.929.

### 1. Caring for oneself

In the domain of caring for oneself, the Commissioner considers "how well [claimants] maintain a healthy emotional and physical state, including how well [they] get [their] physical and emotional wants and needs met in appropriate ways; how [claimants] cope with stress and changes in [their] environment; and whether [claimants] take care of [their] own health, possessions, and living area." 20 C.F.R. § 416.926a(k).

The ALJ found that Plaintiff had less than marked limitation in his ability to care for himself. Tr. 29. The ALJ noted that Plaintiff ate large quantities of fast food. Tr. 29 (citing Tr. 304). The ALJ cited the April 2011 opinion of Mr. Anderson, Plaintiff's teacher, that Plaintiff had no problem caring for himself. Tr. 29 (citing Tr. 205). The ALJ noted that Plaintiff's mother reported that Plaintiff was able to perform household chores and take care of personal hygiene. Tr. 29 (citing Tr. 176).

Plaintiff argues that the ALJ erred by rejecting the opinion of Beth Fitterer, Ph.D., and Debra Iannuzzi, M.D., that Plaintiff was markedly limited in his ability to care for himself. ECF No. 15 (citing Tr. 346). Plaintiff argues that "[t]he only reason the ALJ gave for rejecting this opinion was that 'Dr. Kravitz [the ME at the hearing], said the marked limitation represents a misreading of the description of the domain.'" *Id.* (citing Tr. 23).

The Court finds substantial evidence supports the ALJ's finding that Plaintiff is less than markedly limited in his ability to care for himself. Contrary to Plaintiff's argument, the ALJ did not simply rely on the opinions of the medical expert to discount the marked limitation assessed by Drs. Fitterer and Iannuzzi. Rather, the ALJ cited to several pieces of evidence indicating that Plaintiff is mostly able to take care of himself, including the reports of Plaintiff's teacher and mother. Tr. 29. The ALJ's finding is consistent with other evidence in the record. *See*, *e.g.*, Tr. 304 (Plaintiff reporting to Dr. Cooper that he "tends to his hygiene and grooming without assistance"). Even if the ALJ somehow erred in evaluating the criteria of this domain, any error is harmless because, as discussed *infra*, the ALJ did not err in finding Plaintiff less than markedly limited in any other functional domains. For a claimant to demonstrate functional equivalency, the claimant must be markedly limited in at least two domains. 20 C.F.R. § 416.924a(a). Thus, even if the ALJ had concluded that Plaintiff was markedly limited in his ability to care for himself, such finding would be inconsequential to

the ultimate nondisability determination.[1]  The ALJ did not err in finding Plaintiff less than markedly limited in his ability to care for himself.

### 2. Attending and completing tasks

In the domain of attending and completing tasks, the Commissioner considers "how well [claimants] are able to focus and maintain [their] attention, and how well [they] begin, carry through, and finish [their] activities, including the pace at which [they] perform activities and the ease with which [they] change them."  20 C.F.R. § 416.926a(h).

The ALJ found that Plaintiff had less than marked limitation in attending and completing tasks.  Tr. 26.  The ALJ cited to a November 2008 Individualized Education Program report (IEP) completed by Plaintiff's teacher where the teacher noted Plaintiff capable of working in quiet areas and that Plaintiff had some difficulty paying attention.  Tr. 26 (citing Tr. 291).  The ALJ cited to Dr. Cooper's report, which noted Plaintiff's teachers' observations that Plaintiff's attention was improving.  Tr. 26 (citing Tr. 243); *see also* Tr. 291.  The ALJ cited to a November 2009 IEP indicating that Plaintiff was having trouble paying attention and needed to work at a slower pace.  Tr. 26 (citing Tr. 246).  The ALJ cited to Mr. Anderson's opinion that Plaintiff had no to slight problems in this domain (except Plaintiff had obvious problem paying attention when spoken to directly).  Tr. 26 (citing Tr. 202).  The ALJ found some of Plaintiff's problem attending and completing tasks stemmed from his ADHD, but also due to "attendance issues and lack of effort."  Tr. 26-27 (citing Tr. 223, 227, 294, 296).

---

[1]Plaintiff does not argue, and no evidence in the record supports, that Plaintiff had an "extreme" limitation in his ability to take care of himself.  *Cf.* 20 C.F.R. § 416.924a(a) (the existence of one extreme limitation in a childhood disability domain is enough to prove that a claimant's impairments are functionally equivalent to the listings).

ORDER GRANTING DEFENDANT'S MOTION . . . - 14

Plaintiff argues that the ALJ failed to give adequate reasons for rejecting the opinions of Plaintiff's teachers that he had difficulty paying attention and needed special accommodations.  Specifically, Plaintiff argues that "[t]he ALJ did not explain why absences would make it necessary for [Plaintiff] to 'work in a quiet area where he cannot be distracted by friends' or why he would need special instructions when he was present."  ECF No. 15 at 12 (citing Tr. 27, 232, 246).

The Court concludes that substantial evidence supports the ALJ's finding that Plaintiff is less than markedly limited in his ability to attend and complete tasks. The Court agrees with Plaintiff that Plaintiff's poor attendance does not explain some of the limitations noted by Plaintiff's teachers and cited by Plaintiff. Nevertheless, the ALJ cited to other evidence supporting her decision, including Mr. Anderson's assessment, Tr. 202, and Plaintiff's teacher's opinion that Plaintiff's attention was improving, Tr. 291.  Plaintiff also makes no effort to refute the ALJ's finding that some of Plaintiff's problems were due to Plaintiff's lack of effort.  *See* Tr. 27, 296.  Lack of effort is an additional reason (independent of Plaintiff's poor attendance) provided by the ALJ to question whether Plaintiff's difficulty concentrating and attending to tasks is a result of his impairments. Furthermore, other evidence in the record supports the ALJ's finding. *See* Tr. 307 (Dr. Cooper stating "[Plaintiff] did not describe problems completing tasks"); 315 (Drs. Beaty and Wolfe opining that Plaintiff is less than markedly limited in attending and completing tasks); 345 (Drs. Fitterer and Iannuzzi opining the same). The ALJ did not err in finding Plaintiff less than markedly limited in his ability to attend and complete tasks.

### 3.  Health and physical well-being

In the domain of health and well-being, the Commissioner considers "the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on [claimants'] functioning that [the Commissioner] did not [otherwise consider]."  20 C.F.R. § 416.926a(l).  A child has a "marked" health

and physical well-being limitation if [he or she] is frequently ill because of the impairment(s) or has frequent exacerbations of impairment(s) that result in "significant, documented symptoms or signs." *Id.* § 416.926a(e)(2)(iv).

The ALJ found Plaintiff was less than markedly limited in health and physical well-being domain. Tr. 30. The ALJ reasoned that Plaintiff did not take medication for his ADHD or depression. Tr. 30. The ALJ noted that Plaintiff was obese and had uncontrolled hypertension because he did not consistently take medication. Tr. 30.

Plaintiff argues that the ALJ erred by not discussing how Plaintiff's migraine headaches affected his health and well-being. ECF No. 15 at 13. The Court agrees that the ALJ likely erred by not discussing how Plaintiff's headaches affected his health and well-being. Any error is harmless, however, because the ALJ thoroughly discussed Plaintiff's migraine headaches elsewhere in the ALJ's decision. As discussed *supra*, the ALJ did not err in finding that Plaintiff's complaints of daily migraine headaches were not supported by objective medical evidence. The ALJ also found that medication was helpful in reducing Plaintiff's headaches, but Plaintiff failed to take his medication as prescribed. Furthermore, in the health and well-being domain, the ALJ discussed Plaintiff's uncontrolled hypertension. Both Dr. Hernandez and Dr. Tatunay commented that Plaintiff's migraine headaches were connected to his blood pressure problems. Tr. 330 (Dr. Tatunay explaining "headache may have been secondary to the blood pressure"); Tr. 377 (Dr. Hernandez noting connection between hypertension and headaches). Substantial evidence supports the ALJ's finding that Plaintiff is less than markedly limited in his health and well-being and any error made by the ALJ is harmless.

### 4. Conclusion

The Court concludes that the ALJ's childhood step three analysis is supported by substantial evidence and any error is harmless.

///

**C.    Lay witness testimony**

Plaintiff argues that the ALJ improperly rejected the testimony of Plaintiff's mother, Tammy Castaneda.  ECF No. 15 at 19-20.

Lay witness testimony cannot establish the existence of medically determinable impairments.  *Cf.* 20 C.F.R. § 416.913(d)(a).  But lay witness testimony is "competent evidence" as to "how an impairment affects [a claimant's] ability to work."  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050 (9th Cir. 2006); 20 C.F.R. § 416.913(d)(4); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."); *Brown v. Callahan,* 120 F.3d 1133, 1135 (10th Cir. 1997) ("In disability cases where the child is unable to adequately describe her symptoms, the Commissioner accepts the testimony of a person most familiar with the child's condition, such as a parent.").

Ms. Castaneda testified at the hearing and completed a function report on behalf of Plaintiff. Tr. 66-78, 170-78.  In the function report, Ms. Castaneda represented Plaintiff had difficulty getting to school on time, accepting criticism or correction, obeying rules, and asking for help when needed, Tr. 176; and Plaintiff did not finish things he started and did not complete homework on time Tr. 177.

At the hearing, Ms. Castaneda testified that she took Plaintiff off of his psychiatric medications because they made it too difficult for him to get up in the morning, Tr. 46; Plaintiff is able to work well under the supervision of an adult with whom Plaintiff has a "connection," Tr. 68; she needed to protect Plaintiff from things that make him upset or angry, Tr. 70-71; when Plaintiff gets really bad headaches, he needs to be in a cool, dark room, Tr. 76; and she took Plaintiff to a job fair, but he could not fill out the applications on his own, Tr. 84-85.

The ALJ discussed Ms. Castaneda's reports throughout the ALJ's opinion, but appeared to give those reports little weight.  Tr. 20-21, 22, 28, 32.  The ALJ

found Ms. Castaneda's reporting of Plaintiff's behavioral issues inconsistent with the reports of Plaintiff's teachers. Tr. 22. The ALJ also reasoned that Ms. Castaneda's hearing testimony was inconsistent with the function report she completed on behalf of Plaintiff, in which she indicated that Plaintiff had no social limitations. Tr. 22 (citing Tr. 175). The ALJ found less than credible Ms. Castaneda's testimony regarding Plaintiff taking migraine medication sparingly. Tr. 32. The ALJ reasoned that "[i]f [Plaintiff] is truly having migraines daily, as he testified, it would be assumed he would seek treatment for this impairment and would require a refill of this medication, which was last filled in January 2013." Tr. 32.

The ALJ provided germane reasons for giving little weight to Ms. Castaneda's testimony and reports. Inconsistency between Ms. Castaneda's reporting of Plaintiff's behavioral issues and the reports of Plaintiff's teachers is a germane reason to give Ms. Castaneda's reports less weight. Likewise, to the extent that Ms. Castaneda testified that Plaintiff was socially limited, the ALJ provided germane reasons for rejecting such limitation. *See* Tr. 22 (ALJ noting Ms. Castaneda's testimony inconsistent with her reporting that Plaintiff had no social limitations in her function report) (citing Tr. 175); Tr. 28 (ALJ noting that Ms. Castaneda reported to Dr. Cooper that Plaintiff has several friends with whom he enjoyed "hanging out") (citing Tr. 305). The Court finds the ALJ's statement that "[t]he testimony of [Ms. Castaneda] regarding [Plaintiff] taking the migraine medication sparingly is not entirely credible," Tr. 32, somewhat ambiguous. Ms. Castaneda's testimony that Plaintiff used his migraine medication "sparingly," Tr. 78, seems consistent with her testimony that Dr. Tatunay prescribed Plaintiff a small amount of pills at Plaintiff's final appointment with Dr. Tatunay and Plaintiff has not sought to refill the prescription, Tr. 77-78. *See also* Tr. 391. Regardless of this ambiguous reasoning, the ALJ's other reasons are germane to giving little weight to Ms. Castaneda's testimony concerning Plaintiff's behavioral and social

1    limitations.

2         Plaintiff cites reports prepared by his teachers that are consistent with Ms.

3    Castaneda's testimony.  ECF No. 15 at 20 (citing Tr. 201-03, 296).  Plaintiff's

4    argument is a reasonable interpretation of the evidence, but the ALJ cites to

5    substantial evidence in finding Plaintiff's behavior is not as limiting as alleged by

6    Plaintiff and Ms. Castaneda.  Tr. 22 (citing Tr. 227, 243, 245, 300, 305).  If the

7    evidence is susceptible to more than one rational interpretation, the Court may not

8    substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1097.

9    **D.    Adult step five analysis**

10        Plaintiff argues that the ALJ erred by presenting the VE with an incomplete

11   hypothetical question.  ECF No. 15 at 14-15.  Specifically, Plaintiff argues that the

12   ALJ should have included limitations established by Plaintiff's IEPs and the

13   testimony of Plaintiff and Plaintiff's mother, including Plaintiff's need for

14   accommodations, more time to complete tasks, the need to have instructions

15   repeated, and limitations caused by Plaintiff's migraine headaches.  *Id.* at 14-15.

16        At the hearing, the ALJ asked the VE if a person could work if the person

17   had the following limitations:

19        [D]ue to a combination of headaches and learning disorders and . . .
20        just coping with various emotional issues over the year which are
          more defined in the record . . . an individual who's limited to simple,
21        routine tasks by virtue of reductions of concentration, persistence and
          pace from a number of variables just to that level of work.
22

23             And such work should not be performed in a setting where
24        there's more than brief, superficial contact with the general public or
          any performance of cooperative teamwork endeavors with co-
25        workers, again, just due to the level of distraction and the potential for
          . . . some degree of, perhaps, annoyance or emotional exchange that
26        might not be in the best interest.
27

28   Tr. 79-80.  The VE responded that such a person could perform work as a

ORDER GRANTING DEFENDANT'S MOTION . . . - 19

production assembler, hand packager, or laundry worker.  Tr. 80.

The ALJ posed a second hypothetical question to the VE which included the following limitations:

> an individual who requires special supportive supervision, an individual who would require a need to be shown even perhaps simple, routine tasks over and over and someone who . . . could . . . provide a good deal of empathy for, perhaps, variances in mood or . . . situations that might lead to frustration.

Tr. 81.  The VE responded that a person with such limitations would require a "sheltered work environment."  Tr. 81.

At step five of the ALJ's decision, the ALJ determined that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the VE, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of production assembler, hand packager, and laundry worker.  Tr. 32-33.

The Court finds that the ALJ did not err at step five.  As discussed *supra*, the ALJ did not err in evaluating Plaintiff's credibility or in weighing the medical evidence.  As evidenced by the ALJ's decision, the limitations included in the ALJ's first hypothetical question to the VE were the only limitations the ALJ found credible and supported by the evidence, which are the only limitations that the ALJ is required to include in the ALJ's inquires to the VE.  *See Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001).

Plaintiff argues that the ALJ should have included limitations assessed by Plaintiff's teachers in Plaintiff's IEPs, including Plaintiff's need for accommodations, more time to complete tasks, the need to have instructions repeated, and limitations caused by Plaintiff's migraine headaches.  ECF No. 15 at 14-15.  Plaintiff argues that the ALJ should have credited these limitations as the ALJ "cited [Plaintiff's] IEPs with approval."  ECF No. 15 at 15.

ORDER GRANTING DEFENDANT'S MOTION . . . - 20

The Court disagrees that the ALJ credited, or was required to credit, all the limitations assessed in Plaintiff's IEPs.  In analyzing the six childhood disability domains, the ALJ discussed Plaintiff's IEPs at length.  The ALJ discussed statements contained in the IEPs that tended to support Plaintiff's disability claim, as well as evidence that seemed to contradict such claim.  The ALJ discounted statements regarding Plaintiff's difficulties paying attention and following instructions and his need for extra time.  The ALJ gave these limitations little weight, reasoning that Plaintiff's academic difficulties stemmed largely from his poor attendance and inadequate effort.  As discussed *supra*, the ALJ gave greater weight to evidence indicating that Plaintiff did not have serious difficulties in the six domains of functioning.  *See*, *e.g.*, Tr. 26 (citing Tr. 291) (teachers' observations that Plaintiff's attention was improving).  Given the conflicting evidence, and valid reasons provided by the ALJ to discount certain limitations, the Court must defer to the ALJ's weighing of the statements contained in the IEPs. *See Tackett*, 180 F.3d at 1097 (if the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ).

**E.    Failure to develop the record**

Plaintiff argues that the ALJ failed to adequately develop the record by not requesting physical and mental consultative evaluations of Plaintiff in regards to his adult SSI application.  ECF No. 15 at 16.  Plaintiff argues that the ALJ's duty to develop the record was heightened given the fact that Plaintiff did not have legal representation.  *Id.*  Defendant argues that "there is no ambiguity in this record that would have triggered the ALJ's duty to develop the record by obtaining a consultative examination."  ECF No. 16 at 13.

"In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen*, 80 F.3d at 1288.  This duty is heightened when a claimant is unrepresented

ORDER GRANTING DEFENDANT'S MOTION . . . - 21

during the administrative phase of his or her case.  *See Widmark v. Barnhart,* 454 F.3d 1063, 1068–69 (9th Cir. 2006) (where claimant is unrepresented "it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts," as well as remain "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited"); *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001) (ALJ has duty "to fully and fairly develop the record and to assure that the claimant's rights are considered," and "must be especially diligent in exploring for all the relevant facts" when claimant is not represented).

Despite the ALJ's duty to develop the record, it remains the claimant's burden to prove that he or she is disabled.  42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).  "An ALJ's duty to develop the record . . . is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *see also Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) ("The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate[,] or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous.").  An ALJ may fulfill his or her duty to develop the record by "continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record."  *Smolen*, 80 F.3d at 1288.

In this case, multiple doctors evaluated Plaintiff's impairments.  In September 2010, Plaintiff presented to CeCila Cooper, Ph.D., for a psychological evaluation.  Tr. 303-11.  In October 2010, Edward Beaty, Ph.D., and Charles Wolfe, M.D., completed a Childhood Disability Evaluation Form connected with Plaintiff's initial SSI application.  *See* Tr. 313-18.  In March/April 2011, Beth Fitterer, Ph.D., and Debra Iannuzzi, M.D., completed a Childhood Disability Evaluation Form connected with Plaintiff's SSI application at the reconsideration

ORDER GRANTING DEFENDANT'S MOTION . . . - 22

level. *See* Tr. 343-48. At the April 2013 hearing, the ALJ elicited the opinions of medical expert Larry Kravitz, Ph.D. *See* Tr. 49-55. After the hearing, the ALJ further supplemented the record by obtaining medical records from Dr. Hernandez and Dr. Tatunay. *See* Tr. 349-90, 391-95.

The Court finds that the ALJ did not err in declining to refer Plaintiff to consultative examinations to determine Plaintiff's functional limitations under the adult disability standards. The record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the evidence. *Mayes*, 276 F.3d at 459-60; *Webb*, 433 F.3d at 687. It is true that the State agency physicians, as well as Dr. Kravitz, evaluated Plaintiff's impairments under the childhood disability standards. But these standards are more stringent than the standards applied to adult disability claims. And Plaintiff cites to no authority requiring the ALJ to refer a claimant to consultative examinations simply because the claimant turned eighteen after filing his SSI application. Plaintiff makes no claim that his condition changed or worsened since he turned eighteen and does not contest the ALJ's finding that Plaintiff had not developed any new impairments since attaining age eighteen. *See* Tr. 30. In sum, Plaintiff failed to meet his burden to establish that he was disabled after he became an adult. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

On a final note, the Court disagrees with Plaintiff's assertion that the ALJ somehow erred in explaining to Plaintiff his right to representation. ECF No. 15 at 16 n.1 (citing Manual on Social Security Administration Hearings, Appeals and Litigation Law (HALLEX) I-2-6-52). HALLEX I-2-6-52 does not mandate that the ALJ provide a "required explanation" regarding a claimant's right to representation. ECF No. 15 at 16 n.1. To the contrary, HALLEX I-2-6-52 states that "[t]he ALJ is not required to recite specific questions regarding the right to representation." HALLEX I-2-6-52 further suggests that, at the claimant's request, the ALJ should typically postpone the hearing to allow the claimant to obtain

representation.  In this case, the ALJ complied with HALLEX I-2-6-52 by postponing Plaintiff's hearing to give Plaintiff and his mother the chance to obtain representation.  Tr. 13, 40-41.  Plaintiff was further advised of his right to representation in the hearing acknowledgement letter, Tr. 104-11, as well as in the notice of hearing, Tr. 112-19.  The Court finds no error in the steps taken to inform Plaintiff of his right to representation.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS ORDERED:**

1.    Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED October 15, 2015.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION . . . - 24